PHILLIPS & PAOLICELLI, LLP
ATTORNEYS AT LAW
747 THIRD AVENUE
6TH FLOOR
NEW YORK, NY 10017

(212) 388-5100
FAX: (212) 388-5200

**(VIA CM/ECF)**

September 15th, 2025

Honorable Edward S. Kiel
United States District Judge
District of New Jersey
Mitchell H. Cohen Building
and United States Courthouse
4th Cooper Street
Camden, NJ 08101

Re: *Blymer et al. v. Solvay Specialty Polymers USA, LLC et al.,* No. 25-cv-13774-ESK

Dear Judge Kiel,

      I am writing on behalf of plaintiffs in this matter, pursuant to Rule 6 of Your Honor's Rules and Preferences, requesting leave to file a motion for remand. This case is related to the "Group 2A" and other cases currently pending before Your Honor, concerning claims for damages for serious personal injuries caused by contamination from the Solvay Thorofare facility. The plaintiffs in this case ingested PFAS through airborne emissions, which settled into the soil and then into the aquifer from which plaintiffs' drinking water was drawn. They suffer from severe birth defects and cancers.

      Defendant 3M Co. has removed the case based on the "federal officer" removal statute, 28 U.S.C. §1442(a)(1). 3M asserts that it is "plausible" that plaintiffs' drinking water supplies were also contaminated with a different toxin, aqueous film-forming foam ("AFFF") that 3M supplied to the Philadelphia International Airport and the Philadelphia Navy Yard. Plaintiffs, however, explicitly disclaimed any exposure to AFFF.

      There are two independent bases for remand here: 3M cannot meet the "acting under" requirement for federal officer jurisdiction, nor can it meet the "nexus" requirement. In either case, remand is required. The test for federal officer jurisdiction is as follows: "(1) [the defendant] is a 'person' within the meaning of the statute; (2) the [plaintiff's] claims are based upon the [defendant's] conduct 'acting under' the United States, its agencies, or its officers; (3) the [plaintiff's] claims … are "for, or relating to" an act under color of federal office; and (4) [defendant] raises a colorable defense…. *New Jersey v. Dow Chem. Co.*, 2024 WL 1740087, *5 (D.N.J. Apr. 23, 2024), *aff'd*, 140 F.4th 115 (3d Cir. 2025). First, as to the "acting under" requirement: a private party is "acting under" the government when it is 'involve[d] [in] an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior.'" *Id*. at *6, quoting *Mohr*

*v. Trustees of Univ. of Penn.*, 93 F.4th 100, 105 (3d Cir. 2024) (emphasis the Third Circuit's). This Court held that Dow had not satisfied the "acting under" requirement for several reasons: Dow was selling the product in question before government specifications were promulgated, there was no detailed government involvement or control, and there were no specifications relating to the specific negligence and defects alleged by plaintiffs.

On appeal, the Third Circuit affirmed, because "nothing required Dow to create and sell a product to the Government. And the Government never guided or controlled Dow's production of inhibited TCA." *Id*. at 122. 3M thus cannot meet the "acting under" requirement here for one simple reason: *there were no precise specifications for AFFF that required 3M to use PFAS at all*. The AFFF MDL court has held that "as a matter of law … the AFFF MilSpec is not a reasonably precise specification." *In re: Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, *8 (D.S.C. Sept. 16, 2022). Accordingly, 3M was not "acting under" the federal government, within the meaning of §1442(a)(1), in the production of AFFF. As this Court held in *New Jersey*, and as the Third Circuit affirmed, a much more detailed, stringent level of specifications, and of government engagement, is necessary for the "acting under" requirement to be satisfied. The relationship between 3M and the government as regards AFFF, is the same as that between Dow and the government held insufficient by this Court in *New Jersey*: in both cases, defendant was entirely free to design the product in a way that would have avoided the defects alleged by plaintiffs.

A second, independent reason that jurisdiction does not exist here is that 3M cannot satisfy the "nexus" requirement. 3M's theory -- that use of its MilSpec AFFF at the airport and the Navy Yard plausibly contributed to the alleged PFAS contamination of plaintiffs' drinking water supplies -- makes absolutely no sense in defensive terms. 3M would never actually contend that a finished product it made, about which plaintiffs do not complain, in fact caused plaintiffs' diseases. Indeed, as the Court knows, *3M has never argued, in any of the Group 2A cases, that AFFF from any military site contributed to cause any of plaintiff's injuries*, and so it ought to be disregarded as a defensive theory that could support jurisdiction here.

In any event, plaintiffs have disclaimed any recovery for any such exposures, as defendant admits, and any such exposures were *de minimis* and so must be disregarded. In *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022), the Third Circuit held in identical circumstances that disclaimers such as the one here are valid and foreclose federal officer jurisdiction. This Court followed *City of Hoboken* in *New Jersey*, *supra. Id.* at *10. Here, again, plaintiffs have specifically disclaimed any exposure to the only substance asserted by 3M to have been subject to any government contracts -- AFFF. The disclaimer here thus works exactly as the one accepted by this Court in *New Jersey*. As emphasized by the Third Circuit, disclaimers of this type are not a "ruse" and do not constitute artful pleading and are effective to preclude jurisdiction. 45 F.4th at 713.

Defendant's notice of removal attempts to establish the "plausibility" of military AFFF contamination in plaintiffs' drinking water supplies by linking those supplies to nearby military facilities. Defendant cites a complaint by the State seeking to recover for alleged PFAS contamination across New Jersey from use of AFFF at military facilities. But in that complaint, the State identifies several military or governmental facilities, but *not* the Philadelphia Airport or Navy Yard. And AFFF use at the Philadelphia airport would not implicate the federal officer statute anyway; the airport is owned and operated by the City of Philadelphia. If AFFF was there, it would have been sold by 3M to the airport pursuant to a contract with the City.

As for whether AFFF from the Philadelphia Navy Yard somehow made its way to plaintiffs' drinking water, the notice of removal cites two online publications, without any pinpoint

citations. But one of the cited documents actually states that "a news article (Vineland Daily Journal, 2020) indicated that PFNA has been detected in the National Park, New Jersey water supply. The potential source of these detections was stated to be Solvay Chemical located in neighboring West Deptford township, New Jersey." National Park is directly across the Delaware River from the Navy Yard and airport. Yet the PFAS contamination there appears to have come not from those sites, but from the Solvay Thorofare site thus undermining defendant's theory of plausibility.

Ultimately, it is not enough for defendant to advance a "plausible" factual theory of jurisdiction, just as it would not be sufficient for a removing defendant to allege that it was "plausible" that the plaintiff's citizenship was diverse. Last week, a federal court remanded a PFAS contamination suit that was also removed on the basis that it was "plausible" that defendants' MilSpec AFFF had contaminated plaintiffs' premises. *Marathon Petroleum Co. v. Arkema, Inc.*, 2025 WL 2528353 (W.D. Wash. Sept. 3, 2025). Much as 3M does here, defendants there advanced an elaborate theory as to how MilSpec AFFF might have eventually become "commingled" with the commercial AFFF used at plaintiffs' facility, and even produced an expert affidavit, stating that it was a "plausible inference" that MilSpec AFFF might have "entered" plaintiffs' facility. But "mere plausible inferences" were not enough to support federal jurisdiction; defendant needed to establish the contamination at least on a "more-probable-than-not" basis. Id. at *5.

Finally, even if some small amount of military AFFF from the Navy Yard made its way into plaintiffs' drinking water supplies, this amount would have constituted a *de minimis* exposure at best. Plaintiffs lived adjacent to the Thorofare facility and much farther from Philadelphia sites. The amounts of PFAS entering their water supplies from that facility would have dwarfed any amounts that came from the other sites. When a plaintiff sustains exposures that might implicate the federal officer statute, but those exposures are *de minimis* in the context of plaintiffs' overall exposures, jurisdiction does not exist. *New Mexico ex rel. Balderas v. Monsanto Co.*, 454 F.Supp.3d 1132, 1140 (D.N.M. 2020) ("The vast majority of Monsanto's PCB sales were to government contractors rather than to the Government itself. This is insufficient to confer federal officer jurisdiction."). *Bailey v. Monsanto Co.*, 176 F.Supp.3d 853, 870 (E.D. Mo. 2016); *Kelly v. Monsanto Co.*, 2016 WL 3543050, *9 (E.D. Mo. June 29, 2016).

Plaintiffs respectfully request leave to file a motion for remand, which will be filed immediately upon receiving leave from Court.

Respectfully submitted,

*/ s / Steven J. Phillips*
Steven J. Phillips
Counsel for Plaintiffs

**CC: All Counsel of Record**
**(VIA CM/ECF)**